United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL*,; STATE OF CALIFORNIA *EX REL*.; CALIFORNIA ADVOCATES FOR NURSING HOME REFORM; ISA FOULK; and PHYLLIS PENNINGTON,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, and DOES 1 through 20,<br><br>　　　　Defendants. | No. C 06-03069 JSW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

　　　Now before the Court is the motion for summary judgment filed by Defendant American International Speciality Lines Insurance Company ("AISLIC") and the cross-motion for summary judgment filed by Plaintiffs United States of America *Ex Rel.*, State of California *Ex Rel.*, California Advocates for Nursing Home Reform, Isa Foulk, and Phyllis Pennington ("Plaintiffs"). The Court finds that this matter is appropriate for disposition without oral argument and it is hereby deemed submitted. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for January 18, 2008 is HEREBY VACATED. Having considered the parties' pleadings and the relevant legal authority, the Court hereby GRANTS AISLIC's motion for summary judgment and DENIES Plaintiffs' cross-motion for summary judgment.

**BACKGROUND**

Plaintiffs filed this coverage action to recover defense and indemnity costs under its AISLIC insurance policy, which provides commercial general liability coverage. Plaintiffs seek coverage for an underlying legal proceeding entitled *United States of America, et rel., et al. v. Lenox Healthcare, Inc., et al.*, United States District Court, Northern District, Case No. 99-0651 CRB, a false claims action brought on behalf of federal and state governments.

### A.     The Underlying Action.

In the underlying action, the plaintiffs alleged that Lenox Healthcare, Incorporated ("Lenox") submitted false certifications regarding its compliance with state and federal laws and regulations in order improperly to obtain continued Medi-Cal and Medicare funding and submitted false claims for services rendered. (Plaintiffs' Request for Judicial Notice, Ex. A, ¶¶ 55, 58.)[1] The plaintiffs in the underlying action further alleged that Lenox owned and operated the Mill Valley Healthcare Center (the "Center") since March 1, 1997. (*Id*., Ex. A., ¶ 8.) In October of 1997, the California Department of Health Services ("DHS") conducted its annual certification survey of the Center and found almost thirty deficiencies. (*Id*., Ex. A., ¶ 31.) The DHS gave the Center an opportunity to correct the deficiencies through the submission of proposed plans of corrections. The plans of corrections had to be approved by the DHS to avoid decertification. (*Id*., Ex. A., ¶ 32.) Between October of 1997 and March of 1998, the Center submitted three plans of corrections which the DHS found unacceptable. (*Id*.) On March 26, 2008, the Center submitted another plan which DHS determined made credible allegations of compliance by April 20, 1998, but DHS found numerous deficiencies when it conducted a follow-up survey. (*Id*., Ex. A., ¶ 33.)

Lenox defaulted in the underlying action and the court entered judgment against it. (*Id*., Exs. B, L.) The court found that from at least December 7, 1997 through July 7, 1998:

---

[1]  Plaintiffs and AISLIC request that this Court take judicial notice of documents filed in the underlying action, of documents filed in this action, and an assignment of rights filed in a bankruptcy proceeding. The Court HEREBY GRANTS these requests pursuant to Federal Rule of Evidence 201.

2

> [D]efendants, acting in reckless disregard of the falsity of their claims and statements, submitted claims and represented that they complied with Federal and State nursing home laws. Defendants also recklessly committed in their plans of corrections to correct cited deficiencies in nursing home care in order to continue collections of Medi-Cal and Medicare payments for the care of residents at the [Center]. These statements and commitments were false.

(*Id.*, Ex. L.) The court awarded $1,415,000 in damages under the Federal and State False Claims Acts and awarded $4,245,000 in trebled damages, as well as attorneys' fees and expenses. (*Id.*, Exs. L, N.)

### B.   The AISLIC Insurance Policy.

AISLIC issued to Lenox a Nursing Home Professional Liability Policy, number GL 819-18-25, effective from February 7, 1997 to March 13, 1998. (Coleman Declaration, Ex. A.) Endorsement No. 1 to the policy provides the following:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of the injury to which this insurance applies caused by a medical incident which occurs during the policy period.

(Coleman Decl., Ex. A.) The endorsement defines "medical incident" as:

> any act or omission ... in the furnishing of professional health care services including the furnishing of food, beverages, medications or appliances in connection with such services and the postmortem handling of human bodies... .

(*Id.*)

AISLIC and Plaintiffs filed cross-motions for summary judgment on the issue of whether AISLIC had a duty to defend Lenox in the underlying action.

## ANALYSIS

### A.   Legal Standard for Motions for Summary Judgment.

A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ. P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case.

3

*Id*. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### B. Governing Insurance Coverage Principles.

A liability insurer owes a duty to defend whenever there is a potential for indemnity coverage under the insurance policy. *See, e.g., Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299-300 (1993). Where any allegation demonstrates a potential for coverage, the insurer must mount and fund the defense of the entire action, including claims for which there is no potential for coverage. *Buss v. Superior Court*, 16 Cal. 4th 35, 48 (1997). In order to determine whether an insured has made a claim for covered damages, the court must compare the underlying complaint with the terms of the policy. *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 18 (1995). If the underlying complaint and any relevant extrinsic evidence submitted by the

4

insured do not demonstrate that the underlying claims seek damages that are potentially covered under the policy, the insurance company has no duty to defend. *Id.* at 19.

To interpret the meaning of the policy language, courts must first look at the written provisions of the policy. "If the policy language is clear and explicit, it governs. ... When interpreting a policy provision, we must give its terms their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citations omitted). In undertaking this analysis, courts must read limitations on coverage narrowly and insuring agreements "broadly so as to afford the greatest possible protection to the insured." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (quoting *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985)).

Plaintiffs have the initial burden of demonstrating that the AISLIC Policy could potentially cover some damages alleged in any part of the underlying action. *See Montrose*, 6 Cal. 4th at 300.

### C. The AISLIC Policy Did Not Cover the Underlying Action.

Plaintiffs argue that the underlying action alleged a covered "medical incident" because the preparation of Lenox's plans of correction, the false statements that formed the basis of the underlying False Claims Act ("FCA") action, involved the furnishing of professional health care services. "To state a claim under the FCA, [a plaintiff] must allege that defendant submitted a false claim for payment from the government, that the claim was false or fraudulent, and that the defendant knew the claim was false or fraudulent." *Horizon West Inc. v. St. Paul Fire and Marine Ins. Co.*, 214 F. Supp. 2d 1074, 1077 (E.D. Cal. 2002) (citing 31 U.S.C. § 3729(a)); *see also United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) ("What constitutes the FCA offense is the knowing presentation of a claim that is either fraudulent or simply false."). "The injury suffered by the United States under the FCA is the difference between what the government actually paid and the amount it would have paid in the absence of a fraudulent claim." *Horizon West*, 214 F. Supp. 2d at 1077 (internal quotes and citation omitted). Liability under the FCA is premised on upon presenting a false claim for payment,

"not upon the underlying conduct used to establish the falsity of such a claim." *Id*.; *see also Hopper*, 91 F.3d at 1266 (explaining that the FCA "attaches liability, not to the underlying fraudulent activity, but to the claim for payment") (internal quotes and citation omitted).

Similar to the instant action, in *Horizon West*, the plaintiffs in the underlying action alleged that a retirement home "violated the FCA by submitting Medicare and Medicaid claims for services that were not provided, and by falsifying records to conceal substandard conditions at the nursing homes." *Horizon West*, 214 F. Supp. 2d at 1076. The retirement home argued that the insurance company had a duty to defend the FCA action pursuant to a professional liability insurance policy which covered injuries resulting from providing or failing to provide professional services. *Id*. at 1076-77. The court applied the Ninth Circuit's definition of "professional services" in the context of insurance policies covering such services:

> A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. ... In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.

*Id*. (quoting *Bank of California v. Opie*, 663 F.2d 977, 981 (9th Cir. 1981)). Based on this definition, the court held that the submission of false claims did not involve specialized knowledge required to be considered professional services. Therefore, the court found that there was no duty to defend the FCA action. *Horizon West*, 214 F. Supp. 2d at 1079.

Similarly, in *M/G Transport Services, Inc. v. Water Quality Insurance Syndicate*, 234 F.3d 974 (6th Cir. 2000), the plaintiff purchased a pollution liability insurance policy from the defendant. A FCA complaint was filed against the plaintiff, which alleged that the plaintiff had knowingly falsified records to hide violations of the Clean Water Act in order to obtain payment from the United States. *Id*. at 976. The plaintiff argued that the underlying FCA action fell within the pollution liability insurance policy, which covered any amount paid "by reason of or with respect to" liability to the United States under the Clean Water Act, because the FCA action was brought on behalf of the United States and proof of a Clean Water Act violation was a predicate to establishing any claim to the United States was false. *Id*. at 978. The court

6

1  rejected the plaintiff's arguments for coverage, reasoning that "[a]n FCA action is not converted
2  into a Clean Water Act action simply because a violation of the Clean Water Act is a predicate
3  to establishing the falsity of a claim, or may be used as a measure of damages under the FCA."
4  *Id*.

The Court finds that Plaintiffs' reliance on *PMI Mortgage Insurance Co. v. American International Speciality Lines Insurance Co.*, 394 F.3d 761 (9th Cir. 2005), is misplaced and that their attempts to distinguish *Horizon West* fail. PMI was a large financial institution that sold mortgage guaranty insurance and was sued for violating the anti-kickback provisions of the Real Estate Settlement Procedures Act. The underlying complaint alleged that PMI was undercharging its lender clients for various insurance products and services in exchange for customer referrals on mortgage insurance. *Id*. at 762. PMI sought coverage for the underlying action under a professional liability insurance policy which provided insurance for loss arising from a claim alleging a wrongful act in the rendering or failure to render professional services. *Id*. at 763. Unlike the policy at issue here, the policy in *PMI* defined "professional services" broadly as "those services of the Company permitted by law or regulation rendered by an Insured ... pursuant to an agreement with the customer or client." *Id*. at 764. Based on this definition, the court held that the underlying action fell within the plain meaning of the broad professional services provision because the action resulted directly from PMI's provision of mortgage insurance services under various agreements with clients. *Id*. In fact, the court noted that the definition in the policy was "significantly broader" than in previous cases interpreting "professional services" in liability insurance polices. *Id*. at 767. Moreover, the court found it significant that PMI was not engaged in one of the traditional "professions" and does not render physical or intellectual acts of service commonly associated with doctors or lawyers. *Id*. In addition to the broader definition of "professional services" and the different nature of the profession at issue, the underlying action at issue in *PMI* arose under the Real Estate Settlement Procedures Act, not the FCA. The Court therefore finds that *PMI* is inapposite.

Plaintiffs' efforts to distinguish *Horizon West* do not fare any better. Plaintiffs argue that the claims in *Horizon West* were limited to claims for payment, whereas here, the FCA

7

1  action was premised on the false statements within the plans for correction.  According to
2  Plaintiffs, creating and submitting plans for correction are not merely administrative acts similar
3  to the billing at issue in *Horizon West*.  However, the underlying action at issue in *Horizon West*
4  alleged that the retirement home violated the FCA by submitting false claims *and* by falsifying
5  records to conceal substandard conditions.  *Horizon West*, 214 F. Supp. 2d at 1076.  Moreover,
6  as AISLIC argues, Lenox's liability under the FCA was premised on the presentation of false
7  claims and records or statements to the government, not the underlying deficiencies in patient
8  care that was used to establish the falsity of Lenox's claims and representations.  Notably, the
9  underlying complaint did not allege that Lenox prepared these plans in order to provide a
10 professional health care service separate and apart from obtaining the Medi-Cal and Medicare
11 payments.  Rather, the underlying complaint alleged that Lenox submitted the plans of
12 correction solely to keep receiving the fraudulently-claimed payments.  The falsified plans of
13 correction thus were merely the predicate to Lenox's submission of false claims for which the
14 government sought restitution in the FCA action.

15 The Court finds that, based on the reasoning in *Horizon West* and *M/G Transport*
16 *Services*, the FCA action does not qualify as a "medical incident" which requires the furnishing
17 of "professional services" under the AISLIC policy.  Accordingly, the Court concludes that
18 there was no claim for which there was a potential for coverage under the AISLIC policy, and
19 thus AISLIC did not have a duty to defend the underlying FCA action.  *See Waller*, 11 Cal. 4th
20 at 19.

## CONCLUSION

22 For the foregoing reasons, the Court GRANTS AISLIC's motion and DENIES
23 Plaintiffs' cross-motion for summary judgment.

24 **IT IS SO ORDERED.**

26 Dated: November 27, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE